*170
 
 White, J.
 

 delivered the following opinion of the court.
 

 The record shows, that Gamble had entered this caveat ; that these facts were found by a jury, to wit : that Gamble was living on the land in dispute, on the 6th day of February, 1796 ; that George settled upon it, the last of February, or first of March 1796, and that the land at that time, lay within the Indian boundary ; and that it lies south of French Broad and Holston, and between the rivers Tennessee and Big Pigeon ; that the circuit court had given judgment in
 
 favour
 
 of Gamble, from which judgment the writ of error is taken.
 

 
 *171
 
 The ground relied upon to show that the court erred, is this ; that on the 6th day of February, 1796, when the constitution was framed, this land was secured, by treaty, to the Indians ; and that the framers of our constitution could not have intended to give a preference, where it was unlawful to settle.
 

 We are all of opinion, that the circuit court, upon this point, did not err.
 

 The words of the constitution
 
 are,
 
 "That the people residing south of French Broad and Holston, and between the rivers Tennessee and Big Pigeon, are entitled to the right of occupancy and preemption within, that tract." These words are, in themselves sufficiently extensive to include all those, settled in that country, and within this state. Why are they to be restrained to the land to which the Indian title was extinguished ? Because, say the counsel, the state had no right to the land within the Indian country, and, therefore, could not intend to give preference there. This argument proves too much ; if correct, it would show, that no preference, south of French Broad and Holston, was intended. What is now Tennessee, was once a part of North Carolina ; in the year 1789, it was ceded by that state to the United States ; in that cession a provision is made, that all the warrants and claims of individuals, against North Carolina, should be satisfied ; but some of those warrants or claims could, consistent with the laws of North Carolina, be satisfied out of land south of French Broad and Holston, and west of Big Pigean rivers. Alter those claims were satisfied, the vacant land was to belong to the U. States ; of course, Tennessee having no right to any of the land on that tract, could not, according to the argument, give any preference, and therefore, this constitutional provision will mean nothing. This argument cannot be sound. We must put such construction upon the words, as will give them operation.
 

 In the constitution of Tennessee, we find the bounds of the state specified. This constitution was to be submitted to the Congress of the United States ; and they were to suffer Tennessee, to become a member of the union, according to this constitution, or not. It is conceived reasonable to suppose, that as the convention were aware, that the United States would ultimately have the disposal of the vacant land, within the state of Tennessee ; that if they could in
 
 *172
 
 sert in this constitution, a provision beneficial to the citizens of Tennessee, that when Congress sanctioned this constitution, they would thereby, stand pledged to give this preference, when they came to dispose of the vacant land ; hence, in the constitution they use terms sufficiently extensive to embrace every one, at that time, settled between these rivers.
 

 Since the formation of that constitution, the indian title to this land has been extinguished. By a compact with the United States, Tennessee owns this soil. In that compact provision is made for those occupants, co-extensive with the constitutional provision. By the act of assembly of this state, passed in 1806, all those occupants provided for by the constitutions, are to be permitted to obtain their patents. After all this, the court would be going too far, either to destroy, or narrow this constitutional provision. As it appear, Gamble was in possession when the constitution was framed, and he comes fairly within the words and spirit of the constitution ; he ought to have the preferences. The decision of the circuit court must be affirmed.